UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH L. D'ALESSANDRO, III,

    Plaintiff,

v.                                      Case No. 3:22-cv-807-MMH-PDB

G. EMANOILIDIS, et al.,

    Defendants.

## ORDER

### I. Status

Plaintiff Joseph L. D'Alessandro, III, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on July 11, 2022, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983. In the Complaint, D'Alessandro names as Defendants: (1) G. Emanoilidis, Mental Health Director of Florida State Prison (FSP); (2) Smith, Counselor at FSP; (3) M. Collins, ARNP at FSP; and (4) Carrie Connell, RN at FSP. He alleges that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Amendment. Complaint at 3. As relief, D'Alessandro requests monetary damages. Id. at 5, 8.

This matter is before the Court on Emanoilidis, Collins, and Smith's Motion to Dismiss (Smith Motion; Doc. 17) and Connell's Motion to Dismiss (Connell Motion; Doc. 33). D'Alessandro filed responses in opposition to the Motions. See Smith Response (Doc. 19); Connell Response (Doc. 36). Thus, the Motions are ripe for review.

## II. Plaintiff's Allegations[2]

D'Alessandro alleges that on May 27, 2022, correctional officers escorted him from K-wing to medical after he cut his left arm. Complaint at 5. Medical treated his wound, and officers placed him in a holding cell. Id. D'Alessandro advised Smith that he was suicidal and would continue to cut himself. Id. Smith stated that he would notify Emanoilidis, but Smith would not place D'Alessandro on self-harm observation status (SHOS). Id. D'Alessandro advised Emanoilidis of the same. Id. According to D'Alessandro, he "was told

---

[2] In considering Defendants' Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to D'Alessandro, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

2

to cut [him]self, and [Emanoilidis] wasn't going to provide any treatment for [his] suicidal and psychological problems." Id.

D'Alessandro asserts that officers then escorted him to C-wing. Id. at 5-6. "In [the] hall going to C-wing, [he] had another psychotic episode, as a flashback of a prior situation that occurred in C-wing. . . ." Id. at 6. D'Alessandro declared another psychological emergency for suicidal feelings and hallucinations. Id. He fell to the floor, and officers used "necessary force" to move him inside his cell, remove his hand restraints, and lock the cell door. Id. According to D'Alessandro, he informed the officers of his suicidal ideations while a "handheld audio/video camera" monitored the cell. Id. D'Alessandro states that Emanoilidis arrived at his cell and observed him cutting his arm. Id. Nevertheless, Emanoilidis ignored him and walked away. Id. D'Alessandro continued to cut his arm and lost consciousness. Id. He awoke to officers placing him in restraints, after which they transported him to medical. Id. At medical, Collins applied lidocaine to D'Alessandro's arm and stitched the wound. Id. D'Alessandro contends that Collins and Connell failed to clean or disinfect the wound before stitching it. Id. He "was [] placed on [SHOS]." Id.

After approximately twenty-four hours, D'Alessandro's left arm began to swell and ooze puss. Id. at 7. On May 30, 2022, he notified Emanoilidis that he

3

had an infection. Id. According to D'Alessandro, Emanoilidis called Collins, who prescribed antibiotics to treat the infection. Id. D'Alessandro also informed Emanoilidis that he felt suicidal, but Emanoilidis discharged D'Alessandro from SHOS. Id. An "unknown mental health professional" counseled D'Alessandro and told him that he "was to have individual therapy/counsel[l]ing once a week." Id. D'Alessandro asserts that he has visited the mental health professional on only two occasions. Id. He concludes Emanoilidis canceled his remaining appointments and discontinued his medications. Id.

Based on the above, D'Alessandro seemingly alleges that Emanoilidis and Smith acted with deliberate indifference to his serious medical needs when they failed to prevent D'Alessandro from cutting his arm. See id. at 3, 5. He also asserts that Collins and Connell acted with deliberate indifference to his serious medical needs when they failed to disinfect his wound. See id.

### III. Summary of the Arguments

In the Motions, Defendants argue that the Court should dismiss the claims against them because D'Alessandro failed to properly exhaust his administrative remedies, and he fails to state a claim upon which relief can be granted. Smith Motion at 4-10; Connell Motion at 1-2. D'Alessandro responds

that the Court should not dismiss the claims because he exhausted his administrative remedies, and he alleges sufficient facts to state a deliberate indifference claim against Defendants. Smith Response at 3-7; Connell Response at 3-6.

## IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[3] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S.

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

5

516, 524 (2002). A prisoner such as D'Alessandro, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[4] 286 F.3d, at 1024 (emphasis in original).

---

[4] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [D'Alessandro] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we

7

> established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). In evaluating whether D'Alessandro has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin.

Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or

complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

In the Complaint, D'Alessandro asserts that he filed grievances about the pertinent events at FSP. Complaint at 10. He specifically avers:

> I filed both informal and formal grievances at the [i]nstitutional level[] to no avail . . . . I am in the process of having formal grievance submitted to the Secretary[] FDC.

Id. D'Alessandro maintains that he never received responses to his informal and formal grievances, see id., and grievances "submitted by any and all close management inmates at [FSP] are not being turned into the grievance coordinators if the[y] allege any complaints of prison staff misconduct," id. at 11.

In the Smith Motion, Defendants argue that the Complaint on its face demonstrates D'Alessandro did not to complete the grievance procedure before

11

he filed this case. Smith Motion at 4.[5] By his own admission, D'Alessandro "is still working through the formal grievance procedure. . . ." Id. at 5. As such, they contend that the Court should dismiss the Complaint without prejudice because D'Alessandro failed to exhaust his administrative remedies. Id.

D'Alessandro responds that he exhausted his administrative remedies. Smith Response at 3; Connell Response at 3. According to D'Alessandro, he filed informal and formal grievances "to the Warden's office at Florida State Prison," but he never received responses. Smith Response at 3; Connell Response at 3-4. In response to the Smith Motion, D'Alessandro states that he "then proceeded [to] the filing of his complaint at bar and at the same time he proceeded to submit a[] formal appeal grievance to the Secretary of FDC at the central office level. . . ." Id. (emphasis added). However, in response to the Connell Motion, he asserts that he "then proceeded with the filing of his complaint at bar. But before doing so he did submit another formal grievance to the Secretary of FDC at the central office level. . . ." Connell Response at 4 (emphasis added).

---

[5] Connell incorporates by reference the failure to exhaust argument in the Smith Motion. Connell Motion at 1. Therefore, the Court will cite only to the Smith Motion for purposes of its exhaustion analysis.

12

## D. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motions and Responses and accept as true D'Alessandro's allegations. See Whatley, 802 F.3d at 1209. If D'Alessandro's allegations in the Responses show a failure to exhaust, then dismissal would be appropriate. See id.

Defendants assert that, as D'Alessandro alleges in the Complaint, he filed informal and formal grievances; however, he has not completed the grievance procedure because he "is 'in the process of having formal grievance submitted to the secretary FDC.'" Smith Motion at 5 (quoting Complaint at 10). D'Alessandro responds that he has exhausted his administrative remedies because he submitted a grievance appeal to the Secretary when he filed the Complaint. Smith Response at 3; Connell Response at 4.

Accepting D'Alessandro's view of the facts as true, the Complaint is subject to dismissal at the first step of the Turner analysis. "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). This is because the inmate must afford the agency a "fair and full

13

opportunity" to address his issues on the merits before he seeks judicial intervention. Woodford, 548 U.S. at 90. Here, D'Alessandro alleges that he submitted a grievance appeal when he filed the Complaint on July 11, 2020. He neither waited for the Secretary to respond to his grievance appeal nor for the expiration of the thirty-day response time before filing this lawsuit. In failing to do so, he did not complete the requisite steps to exhaust as determined by state law. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step process for inmate grievances that includes an informal grievance, formal grievance, and appeal). Therefore, the Complaint is due to be dismissed because D'Alessandro failed to exhaust his administrative remedies. See Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision, but filed his lawsuit before he received the final decision on his appeal).

Even if D'Alessandro filed the grievance appeal before filing the Complaint, see Connell Response at 4 ("Plaintiff then proceeded with the filing of his complaint at bar. But before doing so he did submit another formal grievance to the Secretary of FDC at the central office level, after receiving no responses at the institutional levels. . . ."), he still failed to complete the

14

grievance process and, thus, did not properly exhaust his administrative remedies. In the Complaint and Responses, D'Alessandro alleges that he never received responses to his grievances. Complaint at 10; Smith Response at 3; Connell Response at 4. Because an inmate may only proceed to the next step of the grievance process (or pursue a civil action) upon expiration of the time limit to respond at the preceding step, D'Alessandro was required to wait a minimum of fifty days before filing a civil rights complaint regarding Defendants' deliberate indifference: twenty days from the filing of the formal grievance and thirty days from the filing of the grievance appeal.[6] See Fla. Admin. Code R. 33-103.011(4) (stating "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process"). The length of time between May 27, 2022,[7] and July 11, 2022, however, is forty-five days. Thus, even if he filed a formal grievance and appeal, but did not receive responses, he could not have completed the FDOC's grievance process before filing the Complaint. Accepting D'Alessandro's view

---

[6] An inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level when he files a medical grievance. See Fla. Admin. Code R. 33-103.006(3)(e). The Court presumes a grievance concerning the denial of mental health services would qualify as a medical grievance, and D'Alessandro could bypass the informal grievance stage.

[7] While it appears some of the pertinent events occurred after May 27, 2022, see Complaint at 5, the Court gives D'Alessandro the benefit of the earliest possible date that he could have grieved the issue.

15

of the facts as true, he failed to exhaust his administrative remedies, and the Court must dismiss the Complaint at the first step of the Turner analysis. Therefore, the Defendants' Motions are due to be granted on that basis.[8]

Accordingly, it is now

**ORDERED:**

1. Defendants Emanoilidis, Collins, Smith, and Connell's Motions to Dismiss (Docs. 17, 33) are **GRANTED** to the extent Defendants seek dismissal for D'Alessandro's failure to exhaust his administrative remedies. In all other respects, the Motions are denied without prejudice.

2. Plaintiff Joseph L. D'Alessandro's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2023.

MARCIA MORALES HOWARD
United States District Judge

---

[8] Because the claims against Defendants are due to be dismissed for failure to exhaust, the Court need not address Defendants' remaining arguments.

Jax-9 8/18
c: Joseph L. D'Alessandro, III, #B08864
   Counsel of record